## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Inogen, Inc. | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | |
| | § | |
| Alex M. Azar II, Secretary of the | § | Case No. _____ |
| Department of Health and Human | § | |
| Services, in his official capacity; | § | |
| Seema Verma, Administrator of the | § | |
| Centers for Medicare and Medicaid | § | |
| Services, in her official capacity; and | § | |
| Palmetto GBA, LLC | § | |
| | § | |
| **Defendants.** | § | |

## ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF THE COURT:

COMES NOW INOGEN, INC., and files this Complaint against Defendants, Alex M. Azar, Secretary of the Department of Health and Human Services ("HHS"), in his official capacity, Seema Verma, Administrator of the Centers for Medicare & Medicaid Services ("CMS"), in her official capacity, and Palmetto GBA, LLC and would respectfully show the Court the following:

## I.      INTRODUCTION

1.      This lawsuit seeks to invalidate the Defendants' arbitrary and capricious decision to retract a valid HCPCS code to Inogen's Sidekick Tidal Assist Ventilator, thereby eliminating reimbursements for the ventilator, in violation of the Administrative Procedure Act ("APA") (5 U.S.C. §§ 551, *et seq.*). Further, CMS's failure to provide notice and the opportunity to comment on a change in HCPCS code verification for the Sidekick Tidal Assist Ventilator and similar

devices constitutes a violation of procedural rights provided under the Medicare Act (42 U.S.C. § 1395hh(a)(2)), the APA, and Inogen's due process rights.

## II.    PARTIES

2.    Plaintiff is a Delaware corporation that is licensed and accredited to provide durable medical equipment ("DME") items and services to Medicare beneficiaries and has been enrolled as a Medicare DME supplier since May 2009. Plaintiff's principal place of business is 326 Bollay Drive, Goleta, CA 93117.

3.    Defendant Alex M. Azar, II, Secretary of HHS, may be served by any lawful means and is sued in his official capacity only.

4.    Defendant Seema Verma, Administrator of CMS, an operating component of HHS, may be served by any lawful means. The Administrator is sued in her official capacity only.

5.    Defendant Palmetto GBA, LLC ("Palmetto GBA") is a South Carolina Limited Liability Company with its primary office located at 17 Technology Circle, Columbia, South Carolina 29203. It may be served through its Registered Agent, Duncan S. McIntosh at I-20 at Alpine Road AA-270, Columbia, South Carolina 29219. Palmetto GBA is a federal contractor who is contracted to provide certain services related to the administration of Medicare.

## III.    JURISDICTION AND VENUE

6.    This action arises under Title XVIII of the Social Security Act (the "Medicare Act"), 42 U.S.C. § 1395, *et seq.*, and the Administrative Procedures Act ("APA"), 5 U.S.C. §551 *et seq.*

7.      Jurisdiction is grounded upon and proper under: 28 U.S.C. § 1361 as this is an action to compel officers of the United States to perform their duties; 28 U.S.C. § 1395ff(b) as Plaintiff is entitled judicial review of its rights under the Medicare Act after having exhausted its administrative remedies; 28 U.S.C. §§ 2201–2202, as this involves an actual justiciable controversy to which Inogen requires a declaration of its rights by this Court and injunctive relief to prohibit Defendants from violating laws and regulations; and 5 U.S.C. § 702 and 28 U.S.C. § 1331, as Plaintiff seeks a declaratory judgment and injunction pursuant to the APA.

8.      Venue is proper in the United States District Court for the District of Columbia under 28 U.S.C. § 1391(b) and (e) because this is a civil action in which Defendants are officers of the United States acting in their official capacities and one of the Defendants maintains his office and conducts business in this judicial district.  Moreover, a substantial part of the events and omissions giving rise to this suit have occurred within this judicial district.

## IV.      FACTUAL BACKGROUND

**Non-Invasive Ventilators and the Sidekick Tidal Assist Ventilator**

9.      Inogen is a medical technology company that designs and manufactures products that provide life support to medically fragile patients, including Durable Medical Equipment ("DME"). Inogen is also a Medicare Durable Medical Equipment, Prosthetics, Orthotics, and Supplies ("DMEPOS") supplier, enabling it to supply DMEPOS to Medicare beneficiaries and submit claims on behalf of these medically fragile Medicare beneficiaries.

10.     DME is medical equipment that can withstand repeated use, has an expected life of at least 3 years, is primarily and customarily used to serve a medical purpose, generally is not useful to an individual in the absence of an illness or injury, and is appropriate for use in the

home. 42 C.F.R. § 414.202. Examples of DME include wheelchairs, nebulizers, oxygen equipment, and hospital-type beds.

11.     As part of its manufacturing business, Inogen manufactures the Sidekick Tidal Assist Ventilator ("TAV").  The TAV is DME that falls within a category of ventilators known as non-invasive ventilators ("NIV").   An NIV is a type of ventilatory support device that provides pressured oxygen flow to help a patient's breathing without the use of an invasive artificial airway (such as an endotracheal tube or tracheostomy tube). The use of NIVs has increased in the last two decades and has become an important tool in the management of patients with acute and chronic respiratory failure.

12.     NIVs such as the TAV are particularly useful for patients with severe chronic obstructive pulmonary disease ("COPD"). The TAV allows patients to obtain the benefits of pressurized airflow with increased oxygen, while providing patients with mobility options not available with traditional ventilators. For certain COPD patients, this allows them to continue with a mobile lifestyle.

13.     The TAV was cleared by the Food and Drug Administration ("FDA") on December 2, 2016, because FDA determined that the TAV was substantially equivalent to the Breathe Ventilator, BT-V2S, K131562, a legally marketed predicate device.  In providing market clearance, the FDA stated that the TAV "is a volume assist ventilator intended to assist patients with respiratory insufficiency." The device is "designed for continuous applications such as patient ambulation, physical therapy…and other rehabilitation efforts in an institutional or home care environment." (**Ex. C**, pg. 4.2).

14.     The FDA administers two classifications for home-use ventilators: (1) NOU, which is a "ventilator, continuous, home use;" and (2) ONZ, which is a "ventilator, mechanical." The NOU code includes life-sustaining or supporting devices, while the ONZ code does not. FDA has classified the TAV as an ONZ.

**The Healthcare Common Procedure Coding System ("HCPCS")**

15.     In the Health Insurance Portability and Accountability Act ("HIPAA"), Congress required HHS to, among other requirements, establish a nationwide, standard coding system for reporting health care transactions. 42 U.S.C. § 1320d-2. In 2000, HHS published regulations, now codified at 45 C.F.R. § 162.1002 (2000), to implement the standardized coding systems under HIPAA. *See* Department of Health and Human Services, Health Insurance Reform: Standards for Electronic Transactions, 65 Fed. Reg. 50312, 50322-50325 (Aug. 17, 2000). Those regulations established the Healthcare Common Procedure Coding System ("HCPCS") Level II codes as the standardized coding set for describing and identifying health care equipment and supplies.

16.     The HCPCS is divided into two principal subsystems.  Level I of HCPCS consists of identifying codes that are used primarily to identify medical services and procedures furnished by physicians and other health care professionals.  Level II codes are used to identify services not included in Level I, such as ambulance services and durable medical equipment, prosthetics, orthotics, and supplies when used outside a physician's office.  Level II codes classify "similar products that are medical in nature into categories for purpose of efficient claims processing." *See* CMS, Healthcare Common Procedure Coding System (HCPCS) Level II Coding Procedures (Nov.                26,                2019)                available                at

https://www.cms.gov/Medicare/Coding/MedHCPCSGenInfo/Downloads/2018-11-30-HCPCS-Level2-Coding-Procedure.pdf. This case concerns the assignment of Level II codes.

17.     For each alpha-numeric HCPCS code, there is descriptive terminology that identifies a category of like items. Currently, there are national HCPCS codes representing almost 8,000 separate categories of like items or services that encompass products from different manufacturers. When submitting claims, suppliers are required to use one of these HCPCS codes to identify the items they are billing. Health care providers use HCPCS codes when submitting claims to both private and public payers, including the Medicare program.

18.     CMS regularly reviews and modifies HCPCS codes. New HCPCS Level II codes may be requested by application. The HCPCS Workgroup reviews and makes determinations on applications to add, modify, or discontinue HCPCS Level II codes. The HCPCS Workgroup is comprised of representatives from CMS, other federal agencies, state Medicaid agencies, the private insurance sector, and the Department of Veteran's Affairs.  The HCPCS Workgroup evaluates coding applications on a quarterly basis through a public process that allows stakeholders to comment and provide feedback on coding applications and the HCPCS Workgroup's preliminary coding decisions.  The HCPCS Workgroup finalizes its coding decision after each quarterly meeting and posts its coding decision on its website at least a quarter in advance of its effective date.  In some circumstances, CMS may unilaterally establish HCPCS codes to address program needs.

**The Medicare Program and Medicare Part B Coverage for DME**

19.     Title XVIII of the Social Security Act establishes the Medicare program, a federally-funded and federally run program to provide financing for medical treatments and

procedures for seniors and certain people with disabilities.   Medicare is administered by Defendant Azar, Secretary of HHS, through CMS, which is administered by Defendant Verma.

20.     Medicare is comprised of multiple "parts" or programs involving different types of medical treatment.  The Medicare Part B program is a supplemental voluntary insurance program that provides coverage for certain outpatient items and services, including DMEPOS used in the patient's home.

21.     Medicare Part B beneficiaries are able to purchase or rent DME from DME suppliers using their Medicare Part B benefits.

22.     There are multiple parties involved in determining whether and how much Medicare Part B pays for a particular item of DME on behalf of a beneficiary.

23.     CMS contracts with a Pricing, Data Analysis and Coding contractor ("PDAC"). In order to allow for an item of DME to be billed to Medicare (as well as to state Medicaid programs, and commercial payors), a manufacturer of an FDA-approved or cleared item of DME must submit a code verification request with the PDAC. The PDAC assigns existing HCPCS codes to DME devices. After the product is assigned a particular HCPCS code, it can be billed to health care payors, such as Medicare. Defendant Palmetto GBA is currently the PDAC. [1]

24.     CMS has no published policies or guidelines addressing the assignment of HCPCS codes, such as criteria for DME falling within a code's purview, other than the base definition of each code which typically consists of 1-10 words generally describing the item and any dosing measurement, as applicable. CMS also does not have an established process to make rules regarding HCPCS code verification.

---

[1] Palmetto GBA also serves as the Competitive Bidding Implementation Contractor in charge of the CBP.

25.     While the PDAC has the task of verifying and assigning HCPCS codes, it does not establish or maintain Medicare coverage or any related policy procedures.  These remain duties of CMS.

26.     CMS contracts with DME Medicare Administrative Contractors ("DME MACs") to process payments for DME covered under Medicare Part B. The DME MACs determine payment rates for DME claims and processes payments to DME suppliers in one of two ways, both of which rely on the HCPCS code assigned to the particular item(s) of DME by the PDAC.

27.     The first payment methodology is payment in accordance with a fee schedule. CMS establishes and updates a fee schedule, which assigns a pre-set payment amount to each individual HCPCS code. DME suppliers submit claims to the DME MAC for payment by identifying each item of DME furnished to Medicare beneficiaries by the item's HCPCS code. Payment for these claims is processed by the DME MACs in accordance with the terms of the fee schedule and governing regulations. The DME MACs do not have discretion to disregard or modify the fee schedule set by CMS and must pay each item of DME at the amount assigned for the particular HCPCS code.

28.     The second methodology is through the Competitive Bidding Program ("CBP"), which has been implemented in specific geographic areas.  CMS initiates "Rounds" of competitive bidding every 3 years and DME suppliers submit competitive bids for contracts to furnish DME through the CBP. Suppliers make their bids based on the prices at which they believe they will be able to furnish DME covered by each HCPCS code to Medicare beneficiaries in their geographic area. CMS then selects the suppliers offering the most competitive bids for each product category, of which there are 15 for "Round 2021" of the CBP.

Winning suppliers are then paid by the DME MACs the maximum bid submitted for a particular item of DME by bidders whose bids for the product category are equal to or below the pivotal bid for that product category in the competitive bidding geographic area. CMS recompeted contracts for the CBP for "Round 2021" in 2019 for an anticipated effective date of January 1, 2021.

29.     In both payment methodologies, the HCPCS code assigned by the PDAC effectively determines the coverage and payment for the DME devices because the HCPCS code is the principal determining factor the DME MACs and CMS evaluate to determine whether an item of DME is covered under the Medicare program and how much it is paid.

30.     Private insurers similarly rely on the HCPCS code, as established by CMS, to determine coverage and payment for DME. It is also common for private insurers to base their own payments on a percentage of the Medicare DME fee schedule.

**HCPCS Codes For Ventilators**

31.     In recent years, there has been a trend toward making HCPCS codes broader, resulting in a wider range of devices receiving the same code. On November 23, 2015, CMS published a change to the HCPCS codes regarding ventilators. (**Ex. A**). At that time, CMS combined and consolidated the five existing ventilator codes into two codes. Ventilators previously assigned to HCPCS codes E0450 and E0463 were combined into E0465 - *Home ventilator, any type, used with invasive interface*. Ventilators previously assigned to HCPCS codes E0460, E0461, and E0464 were combined into E0466 – *Home ventilator, any type, used with non-invasive interface, (e.g., Mask, Chest, Shell).*" (**Ex. A**, pg. 5). Later, in November 2018, CMS established a new HCPCS code, E0467 - *Home ventilator, multi-function respiratory*

*device, also performs any or all of the additional functions of oxygen concentration, drug nebulization, aspiration, and cough stimulation, includes all accessories, components and supplies for all functions*, for a new, multi-function ventilation device.

32.     As a result of these changes, as of January 2019, CMS designated only three codes for all ventilators: (1) E0465 for invasive ventilators; (2) E0466 for NIVs; and (3) E0467 for the new multi-function ventilation device.  (**Ex. B**)

33.     HCPCS code E0466 is defined as "Home Ventilator, Any Type, Used with Non-Invasive Interface (e.g., Mask, Chest Shell)."  This definition is the only published guidance regarding what equipment should be verified as HCPCS code E0466.  There are no other published testing requirements, functional requirements, definitions, or guidance set forth by CMS for HCPCS Code E0466.

**The TAV's HCPCS Code Verification Process**

34.     Obtaining the proper HCPCS code is a critical step for DME manufacturers and suppliers because it allows for an appropriate reimbursement – not only by the Medicare program, but also by commercial payers. As an NIV, the TAV falls squarely within the descriptor for HCPCS code E0466. (**Ex. A, Ex. B**).

35.     On August 9, 2019, Inogen submitted a Code Verification Request to the PDAC to verify that the TAV could be billed as an NIV under HCPCS code E0466.

36.     On August 30, 2019, Inogen received a letter from the PDAC notifying Inogen that it reviewed Inogen's verification request for the TAV, and "[b]ased on this review and application of the DME MAC policy, the HCPCS code(s) listed below should be used when

billing the DME MACs: E0466 Home Ventilator, any type, used with Non-Invasive Interface, (E.G., Mask, Chest Shell)." (**Ex. D**).

37.     Just 14 days later, on September 13, 2019, the PDAC sent another letter to Inogen retracting the HCPCS code E0466 decision. (**Ex. E**).  The PDAC's retraction of HCPCS code E0466 was allegedly "[b]ased on [its] review and application of the DME MAC policy," but this retraction directly contradicted the PDAC's own verification only two weeks earlier. No explanation was given for how the PDAC could conduct two reviews within 14 days of each other of the same application without any additional information being provided or requested, applying the same DME MAC policies, and arrive at a starkly different finding.

38.     The PDAC's September 13, 2019 letter stated,

> The Centers for Medicare & Medicaid Services (CMS), the Durable Medical Equipment Medicare Administrative Contractors (DME MACs), and the Pricing, Data Analysis, and Coding contractor (PDAC) determined that the devices in the FDA ventilator category ONZ do not have the functional capability to serve as ventilators fully supportive of a ventilator dependent patient.

In making this assertion, the PDAC (1) acknowledged that the TAV is a ventilator, (2) ignored the FDA's determination that a class of devices was safe and effective for ventilator dependent patients, and (3) substituted its unsubstantiated and baseless judgment for that of FDA that a class of medical devices is not safe for ventilator dependent patients.

39.     The PDAC's September 13 letter further stated that the "TAV has limited ability to adjust or control some commonly accepted respiratory parameters, [and] it does not have the full range of controls and gas delivery that would allow it to be accurately classified as ventilator." (**Ex. E**). This is incorrect and contrary to the determination made by the FDA – an agency also under the direction and control of defendant Azar.

40.     The PDAC's September 13 letter references "criteria for code E0466" that is stated for the first time in the letter and has never been subject to comment from stakeholders and has never been formally approved through any administrative rulemaking process.  The letter states:

> Ventilators that meet all the criteria for code E0466 are self-contained devices with integrated blowers, motors, air compressors, and controls that manage the flow of the pressurized air.  The modes of gas delivery allow control of a patient's breathing and highly customizable gas delivery settings.  The delivery of the gas can be varied in oxygen content from room air to nearly 100% oxygen.  Pressure settings available for both control and support of inspiratory and expiratory breaths are essentially infinite.

Defendants' "criteria" is devoid of any previously published or known supporting references, guidelines, materials, or findings to support their decision.  The "criteria" was never subject to public notice and comment.  Further, Defendants' findings are in direct contradiction with the FDA's classification of the TAV as a Continuous Ventilator, Class II with product code ONZ.

41.     Rather than assign the TAV the appropriate ventilator code E0466, the PDAC assigned the TAV HCPCS codes: E1352 Oxygen Accessory and E1390 Oxygen Concentrator. Neither of these codes describe ventilators, NIVs, or the TAV. Oxygen Accessories and Oxygen Concentrators are a different class of products than ventilators, as these products only provide purified oxygen by absorbing other gases in the air. In contrast, the TAV delivers pressurized oxygen and allows the patient to adjust the pressure setting

42.     Not only do oxygen accessories and oxygen concentrators differ functionally for ventilators, the reimbursements for the oxygen devices are a fraction of the reimbursement for ventilators (which are far more complex, and more expensive to develop, manufacture and maintain).  Oxygen concentrators (E1390) are paid a fixed amount on a monthly rental basis

which ranges from $100 to $136 per month based on where the beneficiary resides.  Oxygen accessories garner no additional reimbursement or payment at all, as they are bundled into the E1390 monthly payment.  Ventilators are reimbursed at a higher amount of about $900 to $1100 per month as long as the medical need exists.

43.    Inogen timely submitted a Request for Reconsideration, and CMS denied this Request on January 16, 2020.

44.    There is no further appeal process or administrative review available to Inogen to challenge the HCPCS code verification. As such, Inogen exhausted all of its administrative remedies prior to filing this suit.

45.    Defendants decision to abruptly retract the TAV's code verification for E0466 and assign the TAV to E1352 and E1390 is arbitrary, capricious, an abuse of discretion and violates of Inogen's procedural rights.

46.    Inogen is required to use the HCPCS codes assigned by the PDAC in seeking payment from all payors, including Medicare and commercial payors. Inogen would face liability under the False Claims Act, 31 U.S.C. 3729, if it submitted a claim for payment using the E0466 code that it was originally, and properly, assigned by the PDAC.  It has no avenue to seek to overturn the incorrect HCPCS codes assigned by Defendants other than to file this suit.

**Inogen and the Public Are Harmed by Defendants' Actions**

47.    Inogen expended substantial resources to develop and manufacture the TAV and prepare to supply it to Medicare and commercial insurance patients, with the expectation that Defendants would correctly classify the TAV as a ventilator. Inogen invested approximately $70 million in acquiring the assets necessary to manufacture and market the TAV.

48.     Because Defendants misclassified the TAV, Inogen is wholly unable to market the TAV to Medicare patients or to any patients who have private insurance. The failure to assign code E0446 to the TAV means that Inogen will receive no payment for the device. Inogen's only option is to market the TAV through the non-insurance, retail market, but this market is significantly smaller, and therefore this plan is substantially less viable than selling the TAV through public and private insurance. In total, Inogen has had less than $1 million in retail sales since the PDAC's retraction of HCPCS code E0466, and it expected multiple times this amount in revenue had the correct code been assigned. By Inogen's estimates, Defendants' actions have cost it approximately $7 million in lost revenues as of the filing of this lawsuit. If the incorrect coding is not corrected, this number will grow significantly.

49.     PDAC's retraction denies beneficiaries and patients of all payors the option to obtain or continue using the TAV as a ventilator, which is preferred by many physicians and patients who require assistance from an NIV to breathe. The TAV provides patients with chronic or acute respiratory issues the opportunity to obtain an affordable, portable ventilator that allows patients to receive respiratory therapy in a mobile environment. Defendants' actions will deny patients and providers a choice of ventilators and limit them to devices that allow for less mobility. Many patients' medical conditions do not require a more intensive and expensive ventilator, but Defendants' decision to exclude the TAV bars all other options.

50.     Defendants' actions have had a profound impact in 2020, specifically, due to the COVID-19 pandemic. Many patients with COVID-19 suffer from respiratory issues that necessitate the use of a ventilator, and many patients would benefit from the use of a portable

ventilator like the TAV. A national charity purchased several TAVs for use with COVID-19 patients worldwide.

51.     Further, Defendants' retraction of the TAV's HCPCS Code E0466 and assignment to oxygen equipment codes E1352 and E1390 occurred six days before Round 2021 of the CBP's close, and DME suppliers who bid for the oxygen equipment category did not account for the increased costs associated with the TAV.  Because bids submitted for oxygen equipment are unlikely to adequately reflect the costs of TAV, the Medicare payment for oxygen equipment under the CBP, which is derived from submitted bids, is also unlikely to adequately reimburse for the TAV.  As a consequence, the TAV is unmarketable by Inogen and Medicare beneficiaries are deprived of their ability to obtain a TAV.

52.     Unless immediately enjoined by this Court, Defendants and those acting by, through, or under their control will continue to enforce a decision that violates Inogen's statutory and constitutional rights. If upheld, Defendants' decision will dramatically change and irreparably damage the DME community, and the patients it serves, far beyond Inogen.

## V.     CAUSES OF ACTION

### COUNT 1

**(Decision Issued Without Observance of Required Procedure, 5 U.S.C. § 706(2))**

53.     Inogen pleads and incorporates each paragraph of this complaint as if the same were fully restated herein.

54.     Defendants did not follow the notice and comment rulemaking procedures required by 5 U.S.C. § 553 both in (1) retracting the HCPCS coding verification system for TAV

and (2) by setting criteria for those devices that fall within the scope of HCPCS E0466 and excluding ONZ ventilators from being assigned the HCPCS code for NIVs.

55.     Defendants failed to provide the public notice and the opportunity to comment on their review of the original coding verification decision and their decision to re-assign the TAV and other ONZ NIVs to E1352 and E1390.

56.     Defendants also failed to provide the public notice and the opportunity comment on their criteria for determining which devices fall within the scope of HCPCS E0466.

57.     Without the opportunity for meaningful review, Inogen lacked the ability to challenge Defendants' retraction of the TAV's HCPCS code is limited.

58.     Defendants final decision therefore issued without observance of procedure required by law and should be set aside pursuant to 5 U.S.C. § 706(2).

59.     Inogen seeks a judgment of the Court i) invalidating the retraction of the TAV's HCPCS Code E0466, ii) ordering Defendants to assign HCPCS code E0466 to the TAV, and iii) ordering CMS to properly, with notice and comment, develop and publish guidelines to govern the verification of HCPCS codes, including whether devices qualify for HCPCS E0466.

60.     Alternatively, Inogen seeks a declaration that Defendants action in retracting the TAV's HCPCS Code E0466 and failing to develop and publish, with notice and comment, guidelines to govern the verification of HCPCS codes, including those for devices that fall within the scope of HCPCS E0466, was without observance of procedure required by law, thereby violating the APA.

### COUNT 2

### (Arbitrary and Capricious Decision Making, 5 U.S.C. § 706(2))

61.     The APA prohibits Defendants from carrying out the agency's statutory and regulatory duties in a manner that is unlawful, arbitrary, capricious, an abuse of discretion, contrary to a constitutional right, and/or without observance of procedure required by law.  *See* 5 U.S.C. § 706(2).

62.     Defendants' retraction of the TAV's code E0466 was arbitrary, capricious, and an abuse of discretion.

63.     Defendants' retraction of its assignment of HCPCS E0466 and its assignment of E1352 Oxygen Accessory and E1390 to the TAV was not supported by any published criteria, guidelines, or evidence.  Defendants have neither developed nor published guidelines to govern the verification of HCPCS codes, including which devices qualify for HCPCS code E0466.

64.     Defendants' retraction of HCPCS E0466 is arbitrary, capricious, and an abuse of discretion because it is directly contrary to Defendants' verification assignment of the same code fourteen days prior.  Both decisions were expressly based on a review of the same application and of "DME MAC policies."  No relevant DME MAC policies were changed between August 30, 2019 and September 13, 2019, the dates of the conflicting decisions.  Defendants' reliance on the same policies and an unchanged application to reach opposite results cannot be supported by any reasonable, lawful basis.

65.     Defendants' attempt to explain why the TAV could not receive HCPCS Code E0466 exceeded its statutory jurisdiction, authority, or limitations when it stepped into the role of the FDA in determining whether an entire FDA class of devices was safe for use as ventilators for ventilator dependent patients.

66.     Defendants' retraction of the TAV's HCPCS Code E0466 verification and assertion that FDA approved ONZ-ventilators could not be coded under any of the three available ventilator HCPCS codes became the agency's "final decision" upon its denial of Inogen's Request for Reconsideration.

67.     Both Inogen and the public would be irreparably harmed if Defendants' decision were allowed to stand.  Not only does Defendants' decision render the TAV unmarketable as a ventilator, Defendants' actions have injured Inogen and potentially the broader DME community because Defendants retracted the TAV's verified HCPCS code six days before the close of the DME competitive bid window, therefore rendering DME suppliers who bid the TAV with unknowingly invalid bids.

68.     Inogen has no further means of relief through HHS or CMS. Review by this Court is Inogen's only means of relief.  Inogen is without an adequate remedy at law.

69.     Inogen seeks a judgment of the Court i) invalidating the retraction of the TAV's HCPCS Code E0466, ii) ordering Defendants to assign HCPCS code E0466 to the TAV, and iii) ordering CMS to properly, with notice and comment, develop and publish guidelines to govern the verification of HCPCS codes, including whether devices qualify for HCPCS E0466.

70.     Alternatively, Inogen seeks a declaration that Defendants' action in retracting the TAV's HCPCS Code E0466 was unlawful, arbitrary, capricious, an abuse of discretion, and without observance of procedure required by law, thereby violating the APA.

## COUNT 3
### (Medicare Act, 42 U.S.C. § 1395hh(a)(2))

71.     Inogen pleads and incorporates each paragraph of this complaint as if the same were fully restated herein.

72.     Under the Medicare Act, the government must provide the public with notice and an opportunity to comment on any "rule, requirement, or other statement of policy" that "establishes or changes a substantive legal standard governing the scope of benefits, the payment for services, or the eligibility of individuals, entities, or organizations to furnish or receive services or benefits." 42 U.S.C. § 1395hh(a)(2).

73.     Defendants' retraction of the HCPCS code assigned to the TAV is a change to a rule, requirement, or policy statement.

74.     Defendants' coding decisions involve a substantive legal standard because it determines Inogen's ability to receive payment for the TAV device. Defendants' retraction of the HCPCS code assigned to the TAV effectively determines the amount of reimbursement Medicare, state Medicaid programs and commercial payors will pay for the TAV.

75.     Further, Defendants' retracting a HCPCS code effectively destroys Inogen's ability to furnish ventilators and receive appropriate reimbursement from Medicare, state Medicaid programs and commercial payors for FDA Class ONZ ventilators. Such a change governs the scope of benefits, the payment for services, or the eligibility of individuals, entities, or organizations to furnish or receive services or benefits.

76.     Defendants failed to provide the public notice and the opportunity to comment on their review of the original coding verification decision and their decision to re-assign the TAV and other ONZ NIVs to E1352 and E1390.

77.     Defendants also failed to provide the public notice and the opportunity comment on their criteria for determining which devices fall within the scope of HCPCS E0466.

78.    Defendants' final decision therefore issued without observance of procedure required by law and should be set aside pursuant to 42 U.S.C. § 1395hh(a)(2).

79.    Inogen seeks a judgment of the Court i) invalidating the retraction of the TAV's HCPCS Code E0466, ii) ordering Defendants to assign HCPCS code E0466 to the TAV, and iii) ordering CMS to properly, with notice and comment, develop and publish guidelines to govern the verification of HCPCS codes, including whether devices qualify for HCPCS E0466.

80.    Alternatively, Inogen seeks a declaration that Defendants violated the Medicare Act by retracting the TAV's HCPCS Code E0466 and by failing to develop and publish, with notice and comment, guidelines to govern the verification of HCPCS codes, specifically including those for devices that fall within the scope of HCPCS E0466.

## COUNT 4
### (Procedural Due Process under the 5th Amendment)

81.    Inogen pleads and incorporates each paragraph of this complaint as if the same were fully restated herein.

82.    Defendants' letter to Inogen of August 30, 2019 verifying HCPCS code E0466 for the TAV entitled Inogen to a government-conferred benefit because Inogen could market and sell the TAV as an NIV to patients of all payors, including Medicare, Medicaid, Tricare, and private payors. As such, Defendants' August 30, 2019 letter created a property interest held by Inogen in the benefit it was now entitled to.

83.    By sending the August 30, 2019 letter to Inogen, Defendants created a reasonable expectation of continued receipt of Inogen's entitlement to be able to market and sell the TAV as an NIV to all payors.

84.     Defendants violated Inogen's procedural due process rights when it sent Inogen the letter of September 13, 2019.  The letter of September 13, 2019 deprived Inogen of its property interest in the entitlement of being able to market and sell the TAV as a ventilator, as the two new HCPCS code verifications, E1390 and E1352, are not for ventilators at all, but are, instead, for oxygen accessories. There is no coverage and no payment for the TAV under these HCPCS codes.

85.     Defendants failed to provide Inogen sufficient notice or any opportunity to be heard at a meaningful time and in a meaningful manner before depriving Inogen of its property interest in its entitlement to the benefit of HCPCS code E0466.

86.     Inogen is adversely affected by Defendants' actions because it can no longer market or sell the TAV as an NIV to any payor.

87.     Defendants' actions deprive Inogen of property rights without due process of law.

88.     Inogen seeks a judgment of the Court i) invalidating the retraction of the TAV's HCPCS Code E0466, ii) ordering Defendants to assign HCPCS code E0466 to the TAV, and iii) ordering CMS to properly, with notice and comment, develop and publish guidelines to govern the verification of HCPCS codes, including whether devices qualify for HCPCS E0466.

89.     Alternatively, Inogen seeks a declaration that Defendants actions have violated Inogen's due process rights and ordering Defendants to develop and publish, with notice and comment, guidelines to govern the verification of HCPCS codes, including those for devices that fall within the scope of HCPCS E0466.

## COUNT 5
## (Mandamus, 28 U.S.C. § 1361)

90.     Inogen pleads and incorporates each paragraph of this complaint as if the same were fully restated herein.

91.     Mandamus is available if: (1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to the plaintiff. *Power v. Barnhart*, 292 F.3d 781, 784 (D.C. Cir. 2002). Mandamus gives federal district courts jurisdiction to compel agencies, officers, or employees of the United States to perform duties owed to plaintiffs. 28 U.S.C. § 1361.

92.     Inogen has a clear right to relief because Defendants have failed to set forth any guidelines to HCPCS verification or afford Inogen any kind of due process or opportunity to be heard.

93.     Defendants have a clear duty to act because the action at issue is nondiscretionary. Specifically, Defendants have a nondiscretionary duty to submit proposed rules to be considered by the interested public for comments. 5 U.S.C. § 553(b); 42 U.S.C. 1395hh(a)(2). Defendants also have a duty to provide due process to DME manufacturers that submit applications to have HCPCS codes verified. Further, Defendants have a duty to afford DME manufacturers due process when retracting previously verified and confirmed HCPCS codes.

94.     Inogen has exhausted all administrative remedies.

95.     Therefore, Inogen requests this Court issue an order of mandamus requiring Defendants to (1) establish a procedure by which HCPCS codes are determined and guidelines to ensure that DME manufacturers have an avenue to obtain due process in an action to reconsider

agency decisions to verify or retract HCPCS codes, and (2) establish rules and requirements regarding HCPCS code verification.

## VI.   JURY DEMAND

96.   Inogen requests a trial by jury on all issues.

## VII.   RELIEF REQUESTED

97.   Inogen requests that Defendants be cited to appear and that, upon final hearing, Inogen be granted the following relief:

(a) Judgment under the Administrative Procedures Act:

1. invalidating the retraction of the TAV's HCPCS Code E0466;

2. ordering Defendants to assign HCPCS code E0466 to the TAV; and,

3. ordering CMS to properly, with notice and comment, develop and publish guidelines to govern the verification of HCPCS codes, including whether devices qualify for HCPCS E0466.

4. Alternatively, Inogen seeks a declaration that Defendants' action in retracting the TAV's HCPCS Code E0466 was unlawful, arbitrary, capricious, an abuse of discretion, and without observance of procedure required the APA.

(b) Judgment of the Court under the Medicare Act:

1. invalidating the retraction of the TAV's HCPCS Code E0466;

2. ordering Defendants to assign HCPCS code E0466 to the TAV; and,

3. ordering CMS, with notice and comment, to develop and publish guidelines to govern the verification of HCPCS codes, including whether devices qualify for HCPCS E0466.

4. Alternatively, Inogen seeks a declaration that Defendants violated the Medicare Act by retracting of the TAV's HCPCS Code E0466, and by failing to develop and publish, with notice and comment, guidelines to govern the verification of HCPCS codes, including those for devices that fall within the scope of HCPCS E0466.

(c)      Judgment of the Court under the 5th Amendment to the U.S. Constitution:

1.    declaring that Inogen's procedural due process rights were violated by Defendants' retraction of the TAV's HCPCS Code E0466 without providing Inogen sufficient notice or opportunity to be heard at a meaningful time and in a meaningful manner;

2.    invalidating the retraction of the TAV's HCPCS Code E0466;

3.    ordering Defendants to assign HCPCS code E0466 to the TAV; and,

4.    ordering CMS, with notice and comment, to develop and publish guidelines to govern the verification of HCPCS codes, including whether devices qualify for HCPCS E0466;

(d)      Entry of an order of mandamus, directing Defendants:

1.    to establish a procedure by which HCPCS codes are determined and guidelines to ensure that DME manufacturers have an avenue to obtain due process in an action to reconsider agency decisions to verify or retract HCPCS codes; and,

2.    to develop and publish guidelines, with notice and comment, to govern the verification of HCPCS codes, including whether devices qualify for HCPCS E0466.

(e)      Entry of a preliminary and permanent injunction directed to Defendants and their agents and all persons acting by, through, or under them that:

1.    orders them to reinstate HCPCS code E0466 to the TAV as of its original effective date of August 30, 2019;

2.    orders them to implement and properly publish standards to be used in evaluating and considering procedures, policies, and guidelines for verifying NIV HCPCS codes issued and/or retracted;

3.    orders them to implement meaningful review procedures of the PDAC processes, protocols, guidelines, and requirements for verification of HCPCS codes for NIV; and,

4.    orders them to comply with the mandates of the APA and the Medicare Act and afford the required notice and comment on the reclassification of any and all NIV HCPCS codes.

98.    Cost of suit.

99.     Reasonable and necessary attorneys' fees through trial and any appeal.

100.    Such other and further relief, legal or equitable, general and special, to which Inogen may be justly entitled.

Respectfully submitted,

INOGEN, INC.
By its attorneys,

/s/ Thomas R. Barker

John Ben Blanchard
*Pro hac vice admission pending*
Matt W. Sherwood
*Pro hac vice admission pending*
BROWN & FORTUNATO, P.C.
905 S. Fillmore, Suite 400
Amarillo, TX 79101
(806) 345-6300 telephone
(806) 345-6363 facsimile
jblanchard@bf-law.com

Thomas R. Barker (Bar No. 994485)
Haider Andazola
*Pro hac vice admission pending*
FOLEY HOAG LLP
1717 K Street, N.W.
Washington, D.C. 20006
(202) 223-1200 telephone
(202) 785-6687 facsimile
tbarker@foleyhoag.com
handazola@foleyhoag.com

Kristyn DeFilipp
*Pro hac vice admission pending*
Andrew M. London
*Pro hac vice admission pending*
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02210
(617) 832-1000 telephone
(617) 832-7000 facsimile
kdefilipp@foleyhoag.com
alondon@foleyhoag.com